This opinion is uncorrected and subject to revision before publication in the New York Reports.
-----------------------------------------------------------------

No. 58
The People &c.,
          Appellant,
        v.
Jarrod Brown,
          Respondent.


          Danielle S. Fenn, for appellant.
          David Crow, for respondent.


LIPPMAN, Chief Judge:

        The issue presented by this appeal is whether the 2011 amendments to CPL 440.46 expanded the class of defendants eligible for resentencing under the Drug Law Reform Act to include those who are on parole at the time resentencing is sought. We left this question open in People v Paulin (17 NY3d 238, 243 [2011]) and People v Santiago (17 NY3d 246, 247 [2011]),

- 1 -

and now hold that the amendments did expand eligibility to parolees, and affirm the Appellate Division order (115 AD3d 155 [2014]) upholding the resentencing of the paroled defendant under that provision.

In the summer of 2001, defendant sold cocaine to an undercover police officer in Queens. On May 30, 2002, defendant pleaded guilty to one count of third-degree criminal sale of a controlled substance, a class B felony, and was sentenced to an indeterminate prison term of six to twelve years to be followed by three years of postrelease supervision. He was conditionally released on April 15, 2011, with a maximum expiration date of July 16, 2017.

While on parole for the instant offense, defendant moved for resentencing pursuant to CPL 440.46. The People opposed on grounds that he was ineligible for resentencing under that provision because he was not currently incarcerated. Defendant contended that he was eligible for relief due to the 2011 amendments to section 440.46, which now reflected the merged New York State Department of Correctional Services and the New York State Division of Parole under a single agency -- the New York State Department of Corrections and Community Supervision ("DOCCS") (see L 2011, ch 62, pt. C, subpt. B, sec 79).[1]

_____

[1]     As originally enacted, to be eligible for resentencing under CPL 440.46 an individual had to be convicted of a class B drug felony and "a [ ] person in the custody of the department of correctional services" (L 2009, ch 56, part AAA, § 9 [enacting

On July 31, 2012, Supreme Court granted defendant's motion for resentencing. The court concluded that the revised section 440.46 did "not distinguish between defendants who are incarcerated and those who are on parole but are not incarcerated." The court resentenced defendant to a seven-year determinate prison term to be followed by three years of post-release supervision, making the maximum expiration date of his sentence July 16, 2012.

The Appellate Division unanimously affirmed holding that the plain language of section 440.46, when read together with Executive Law section 259-i (2)(b), meant that non-incarcerated defendants on parole were in the "custody" of DOCCS and, thus, were eligible for resentencing (People v Brown, 115 AD3d at 158). The court further held that because CPL 440.46 was a remedial statute, it should be liberally construed (id. at 161). A Judge of this Court granted the People leave to appeal (23 NY3d 961 [2014]), and we now affirm.

*   *   *

"[T]he governing rule of statutory construction is that courts are obligated to interpret a statute to effectuate the intent of the Legislature, and when the statutory language is clear and unambiguous, it should be construed so as to give

_____

CPL 440.46(1)]). Accordingly, only incarcerated individuals were eligible to apply for resentencing under CPL 440.46 (see People v Paulin, 17 NY3d 238, 243 [2011]; People v Santiago, 17 NY3d 246, 247 [2011]).

effect to the plain meaning of the words used" (People v Williams, 19 NY3d 100, 103 [2012], quoting People v Finnegan, 85 NY2d 53, 58 [1995]).  The language of CPL 440.46 (1) encompasses "*any person in the custody of [DOCCS]*" (emphasis added).  A non-incarcerated parolee is within the "legal custody" (Executive Law § 259-i [2][b]) of DOCCS.  Thus, the plain meaning of CPL 440.46 (1) leads to the conclusion that a non-incarcerated parolee is eligible to apply for resentencing under the statute.

Even if the plain language of CPL 440.46 were ambiguous, further analysis would lead us to the same conclusion. First, the People's contention that the Legislature limits use of the term "custody" to defendants who are incarcerated is contradicted by the language of several statutes.  Executive Law § 259-i (2)(b), for example, states that a parolee shall be in the "legal custody" of DOCCS until, among other possibilities, "return to imprisonment in the custody of the department"  (see also Correction Law § 275 [using both "legal custody" and "custody" in reference to a person who has been granted conditional release]; CPL 410.50 (1) ["Custody. A person who is under a sentence of probation is in the legal custody of the court that imposed it pending expiration or termination of the period of the sentence"]).  In fact, multiple provisions of Executive Law § 259-i use the phrase "imprisonment in the custody of the department" or "inmate in the custody of the department" to clarify that they refer only to incarcerated persons (see

Exec. Law §§ 259-i [2][c] [A][iv], [2][d][i], [d][ii], [3][a][i]).

Furthermore, in Matter of Hawkins v Coughlin (72 NY2d 158 [1988]), this Court rejected an argument that "custody" inherently refers only to incarcerated persons. There, in determining that the defendant was not entitled to a credit pursuant to Penal Law § 70.30 (3), we said that the term "custody," as used in that statute, meant "'confinement' or 'detention' under guard and not 'constructive custody' such as release on parole or bail" (72 NY2d at 162). The Court referred to the legislative history of the statute and determined that "the Legislature intended the provision to apply only to time spent in some type of 'actual' custody" (id. at 163). The legislative history of CPL 440.46, however, differs greatly from that attributed to Penal Law § 70.30 (3). In fact, the intent of the DLRA "was to grant relief from what the Legislature perceived as the 'inordinately harsh punishment for low level non-violent drug offenders' that the Rockefeller Drug Laws required" (Paulin, 17 NY3d at 244, quoting Assembly Sponsor's Mem, Bill Jacket, L 2004, ch 738 at 6).

Contrary to the People's contention, the 2011 amendments were not purely budgetary or technical changes. The 2011 law emphasized "the evolution of the sentencing structure" toward a "focus on reentry," and the "commonality of purpose governing the fundamental missions of both agencies" to "provide

for a seamless network for the care, custody, treatment and supervision of a person, from the day a sentence of state imprisonment commences, until the day such person is discharged from supervision in the community" (L. 2011, ch 62, Part C, Subpart A, § 1).

Finally, remedial statutes such as the DLRA should be interpreted broadly to accomplish their goals -- in this case the reform of unduly harsh sentencing imposed under pre-2005 law (see NY Statutes § 321 ["Generally, remedial statutes are liberally construed to carry out the reforms intended and to promote justice"]).  In People v Sosa (18 NY3d 436 [2012]), we acknowledged that the language of CPL 440.46 (5) was potentially ambiguous and noted that the DLRA is a remedial statute that should be read broadly unless the limitation proposed is "clearly expressed" (18 NY3d at 440-441).  We also noted that any ambiguity in CPL 440.46's eligibility section should be read in favor of the applicant because a finding of eligibility is simply the first step in the resentencing process -- the ultimate decision lies in the exercise of discretion of the reviewing judge as part of the court's "substantial justice" determination (id. at 443, citing CPL 440.46[3]).  Furthermore, this interpretation of CPL 440.46 corrects the anomaly under the pre-merger law of permitting resentencing for parole violators who have been returned to prison, but not for those who had complied with the terms of their parole (see Paulin, 17 NY3d at 244), and

is consistent with <u>Santiago</u>, which permitted resentencing where a defendant was incarcerated when he or she applied but was released before a determination was rendered on the application.

Accordingly, the order of the Appellate Division should be affirmed.

People of the State of New York v Jarrod Brown

No. 58

READ, J. (DISSENTING):

        When we decided People v Paulin (17 NY3d 238 [2011])
four years ago, there was no dispute that CPL 440.46 limited its
resentencing relief to incarcerated persons; parolees were
ineligible.  This was so because the statute applied to "[a]ny
person in the custody of the department of correctional services"
(emphasis added), the agency that ran the state prison system
when this provision was enacted as part of the 2009 Drug Law
Reform Act (2009 DLRA).  We observed that "in making this
distinction" between prisoners and parolees, "the Legislature
recognized that the burden of inordinately harsh punishment
[imposed by the Rockefeller Drug Laws] falls most heavily on
those who are in prison" (id. at 244 [internal quotation marks
omitted] [emphasis added]).

        After their convictions for class B drug felonies,
Paulin and Pratts, the defendant in a companion case, were
sentenced and incarcerated, eventually released on parole,
violated their parole and so were reincarcerated.  When the 2009
DLRA took effect, they applied for resentencing.  The wrinkle in
Paulin and Pratts, then, was that the defendants were in prison
for violating their parole, and the question presented was

- 1 -

whether this made them ineligible for resentencing under CPL 440.46.

After the appeals had been briefed but before they were argued, the Governor signed chapter 62 of the laws of 2011.  As part of the State's enacted budget for fiscal year 2011-2012, various State agencies and entities were restructured, principally to save money by streamlining operations and rationalizing missions.  Chapter 62, an article VII budget bill, made those changes to permanent law necessary to effectuate or reflect several of these restructurings, including the merger of the Department of Correctional Services and the Division of Parole to form a combined Department of Corrections and Community Supervision (see generally Pataki v New York State Assembly, 4 NY3d 75, 83 [2004], quoting NY Const, art VII, §§ 2, 3 ["The Governor submits a budget to the Legislature accompanied by 'a bill or bills containing all the proposed appropriations and reappropriations included in the budget and the proposed legislation, if any, recommended therein'" [emphasis added]).

Defense counsel for Paulin and Pratts wrote to inform us of this development.  He recognized that chapter 62 did not govern his clients' appeals because the orders denying them resentencing relief predated the legislation's effective date. He nonetheless contended that "the amendments, together with the new law's integrated statement of legislative intent, confirm what we argued in our previously filed briefs, i.e., that a

plain-language interpretation of CPL § 440.46 advances the legislative intent that motivated the 2009 DLRA."

We subsequently held in Paulin that "prisoners who have been paroled, and then reincarcerated for violating their parole, are not for that reason barred from seeking relief under [CPL 440.46]" (4 NY3d at 242). This was so, we opined, because "Paulin and Pratts fit squarely within the text of the 2009 DLRA" (id. at 243); that is, they were in prison when they filed their applications for resentencing under the 2009 DLRA (see also People v Santiago, 17 NY3d 246 [2011] [a prisoner who applied for resentencing under the 2009 DLRA while incarcerated remains eligible for relief even if paroled before the application is ruled on]). We declined to consider chapter 62, observing in a footnote that "[a] recent amendment changed the words 'department of correctional services' to 'department of corrections and community supervision.' The change is of no consequence in these cases. We need not decide its effect, if any, on other situations" (id. at * [citation omitted]).

The Court now holds that this name change expanded resentencing eligibility under the 2009 DLRA "to include those who are on parole at the time resentencing is sought" (see majority op at 1). The majority principally relies on the text of section 440.46, as amended by chapter 62, and the principle that "remedial statutes such as the DLRA should be interpreted broadly to accomplish their goals -- in this case the reform of

unduly harsh sentencing imposed under pre-2005 law" (id. at 6).[1]

While we depend first and foremost on the text of a statute to determine what the Legislature intended, we have always recognized that text may not properly be read in isolation and that statutes must be construed as a whole; i.e., text derives meaning within a context (see Friedman v Connecticut Gen. Life Ins. Co., 9 NY3d 105, 115 [2007]).  Here, the relevant statute is chapter 62 of the laws of 2011, part C, subparts A and B.  Subpart A includes the statement of legislative intent to support merger of the Department of Correctional Services and the Division of Parole to form the Department of Corrections and Community Supervision, and amends substantive law as necessary to create the new agency; e.g., by adding a new article 8, entitled "Community Supervision," to the Correction Law.

Subpart B, by contrast, merely enacts amendments as necessary to reflect the merger.  In furtherance of this purpose, sections one through 48 of subpart B make name change and other minor technical amendments to the Correction Law, and sections 49 through 173 march through 35 other titles of New York's Consolidated Laws, substituting "Department of Corrections and

---

[1]The majority also states that its interpretation "corrects the anomaly under the pre-merger law of permitting resentencing for parole violators who have been returned to prison, but not for those who had complied with the terms of their parole," citing Paulin (majority op at 7).  In Paulin, however, we expressly rejected the idea, advanced by the People in that case, that any such purported "anomaly" created an absurd result that the Legislature never would have intended.

Community Supervision" for "Department of Correctional Services"
or "Division of Parole."[2]   No changes in substantive law
accompany these name change amendments; only additional technical
corrections were effected, such as emendations to replace agency
names made obsolete by previous government restructurings (e.g.,
"Office of Children and Family Services" for "Division for
Youth"), to render the language gender-neutral (e.g, "him or her"
for "him") or to correct typographical errors.  The amendment of
section 440.46 to replace "Department of Correctional Services"
with "Department of Corrections and Community Supervision"
appears in one of the 17 sections in subpart B where these minor
changes were made to provisions in the Criminal Procedure Law.

          Thus, while the merger _itself_ may be said to carry out
the Legislature's judgment that a unitary agency responsible for
all offenders makes sense for purposes of sentencing and
rehabilitative as well as budgetary policy, the same cannot be

---

[2]The titles amended were the Abandoned Property Law, the
Alcohol and Beverage Control Law, the Civil Practice Law and
Rules, the Civil Rights Law, the Civil Service Law, the County
Law, the Court of Claims Act, the Criminal Procedure Law, the
Education Law, the Election Law, the Environmental Conservation
Law, the Executive Law, the Facilities Development Corporation
Act, the Family Court Act, the General Business Law, the General
Municipal Law, the Labor Law, the Legislative Law, the Mental
Hygiene Law, the Municipal Home Rule Law, the Penal Law, the
Public Buildings Law, the Public Health Law, the Public Officers
Law, the Railroad Law, the Retirement and Social Security Law,
the Social Services Law, the State Administrative Procedure Act,
the State Finance Law, the State Technology Law, the Surrogate
Court's Procedure Act, the Tax Law, the Town Law, the Vehicle and
Traffic Law and the Workers' Compensation Law.

said for the 2011 amendment of section 440.46.  The majority
gives substantive law meaning to a mere name change amendment,
which is belied by the context in which it was adopted as part of
an article VII budget bill.  And since this name change amendment
was not intended to have any remedial effect, its enactment
presents no occasion for us to interpret section 440.46
differently and more broadly now than we did in Paulin.

The majority highlights, and obviously agrees with,
policy considerations that favor allowing nonincarcerated
parolees to apply for the sentencing relief made available by
section 440.46.  But it is up to the Legislature, not the courts,
to decide whether to expand this provision's ameliorative sweep,
and I cannot agree that the Legislature has done so.  At most,
the 2011 amendment of section 440.46 created an ambiguity easily
resolved by considering its place within chapter 62, part C as a
whole.  Finally, the restructuring of State agencies and entities
through the budget process is routine.  I therefore worry about
the potential consequences of today's decision to alter
substantive law on the authority of a run-of-the-mill name change
amendment appearing in an article VII budget bill.  Accordingly,
I respectfully dissent.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Chief Judge Lippman.  Judges Pigott,
Rivera, Stein and Fahey concur.  Judge Read dissents in an
opinion in which Judge Abdus-Salaam concurs.

Decided May 14, 2015